UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARGARET A. CONNER,

       Plaintiff,

v.                                                Case No. 4:04-CV-100

R. JAMES NICHOLSON, Secretary,        HON. GORDON J. QUIST
Department of Veterans Affairs,

       Defendant.
_____/

## **OPINION**

       Plaintiff, Margaret A. Conner ("Conner"), proceeding pro se, has sued R. James Nicholson, in his official capacity as the head of her former employer, the Department of Veterans Affairs (the "VA" or Defendant), alleging claims of discrimination on the basis of her race, color, and sex and sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 to 634; and disability discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 to 794e. Conner also apparently alleges that Defendant retaliated against her for engaging in protected conduct. Now before the Court are Defendant's motion for summary judgment and Conner's motion to strike the declarations of Cindy L. Martin, Thomas Maher, and Shelly Hendryx, submitted by Defendant in support of its motion. For the reasons set forth below, the Court will deny Conner's motion to strike the declarations, grant Defendant's motion for summary judgment, and dismiss this case with prejudice.

## I. <u>Facts</u>

Conner was employed as a registered nurse at the VA Battle Creek facility from April 28, 1985, to March 29, 1997. She is a black female and, at all times relevant to this action, was over 40 years old. Cindy L. Martin ("Martin"), a Nurse Manager at the VA Battle Creek facility, supervised Conner from the end of November, 1996, through the last day of Conner's employment.

On November 14, 1996, the United States filed a four-count indictment against Conner, <u>see</u> <u>United States v. Conner</u>, 1:96-CR-31 (W.D. Mich.), in this district. Count 1 alleged a violation of 42 U.S.C. § 408(a)(4)(1) for failing to disclose an event effecting payment of Social Security benefits; Counts 2 and 3 alleged violations of 42 U.S.C. § 408(a)(7)(B) for using false Social Security numbers on two direct deposit sign-up forms; and Count 4 alleged a violation of 18 U.S.C. § 641, for theft and conversion of Social Security disability benefits to which Conner was not entitled. On April 29, 1996, Conner pled guilty to Count 1 pursuant to a plea agreement in which she admitted to receiving Social Security benefits for eight years knowing that she was not entitled to them. (4/29/96 Plea Tr. at 11.) Conner explained to the court that she had failed to notify the Social Security Administration that she had obtained employment with the VA, and that the Social Security Administration had one Social Security number and she had given the VA a different number. (<u>Id.</u> at 15.) She also admitted that she knowingly committed the offense. (<u>Id.</u> at 16-17.) On August 15, 1996, Conner was sentenced to five years probation and ordered to pay restitution in the amount of $74,789. (8/15/96 Sentence Tr. at 38-41.) During the sentencing hearing, Conner's attorney informed the court that she would likely lose her job as a result of the conviction. (<u>Id.</u> at 25.) The VA was subsequently notified of the conviction and acknowledged receipt of the wage assignment from the Department of Justice, copying Conner on its acknowledgment letter. (Letter of 2/4/97 from Kincer to Dep't of Justice, Def.'s Br. Supp. Ex. A.)

On January 6, 1997, the VA furnished a letter to Conner notifying her of its proposed decision to discharge her based upon the conduct underlying her conviction. (Letter of ½/97 (signed by Conner on 1/6/97) from Garcia to Conner, Def.'s Br. Supp. Ex. B.) The letter cited two bases for the decision: (1) that her conduct violated 5 C.F.R. Part 735, and 5 C.F.R. Part 2635, which prohibit federal employees from engaging in criminal and dishonest conduct and from engaging in fraud and making false statements in connection with a government matter. In particular, the notice advised:

> On or about April 28, 1985 you signed and certified a government document (Standard 85) giving a false social security number. On or about May 6, 1985 you signed and certified a government document (Standard Form 2809) giving a false social security [sic]. On or about March 8, 1987 you signed and certified a government document (VA Form 10-2805a) giving a false social security number. You are charged with the intentional concealment of your correct social security number in connection with your employment with VA and willfully falsifying government documents and records with a[n] erroneous social security number. This is a violation of 5 CFR, Part 2635 and 18 U.S.C. 1001.

(Id.) Finally, the letter informed Conner of her right to reply to the decision and to submit evidence in support of her reply.

Later that same day, January 6, Conner claimed that she sustained an injury to her head and back when she slipped on some ice and fell in the facility's parking lot. On January 6 or 7, Conner filed a claim with the VA for workers compensation benefits. Conner submitted a note dated January 13, 1997, from her doctor, Richard A. Proos, M.D., stating that she was incapacitated from January 13, 1997, to January 21, 1997. Conner was diagnosed with low back strain and contusion. On January 28, 1997, Dr. Proos submitted a letter to Shelly Hendryx ("Hendryx"), the Compensation Specialist at the Battle Creek facility, stating that Conner would be incapacitated until at least February 4, 1997, and that "[h]er prognosis remains very good." (Letter of 1/28/97 from Proos to Hendryx.)

3

Under the Federal Employees' Compensation Act, an employee who is incapacitated is entitled to continuation of pay ("COP") during any periods of resulting disability up to a maximum of 45 days. (Hendryx Aff. ¶ 3.) The employer, rather than the Office of Workers' Compensation Programs ("OWCP"), is responsible for COP. If the employee remains disabled after the initial period, the employee may claim disability compensation by filing a Form CA-7 with OWCP for continued disability compensation. (Id.) Conner was granted COP from the date of the alleged injury through March 16, 1997. (Id. ¶¶ 3, 4.) However, the VA, through Les Nicholson ("Nicholson"), Chief of Human Resources, contested Conner's claim for continued disability compensation in a letter to the OWCP dated February 24, 1997, citing Dr. Proos' observations that Conner, in her own mind, had not improved, and that her complaints of pain were out of line with the injury. (Letter of 2/24/97 from Nicholson to OWCP, Def.'s Br. Supp. Ex. F.) Nicholson suggested that the real explanation for Conner's lack of recovery was that the injury did not occur, i.e., that Conner fabricated the incident immediately after she had received the notice of proposed removal. (Id.)

On February 20, 1997, the VA, after considering Conner's oral and written replies and other factors, affirmed its decision to discharge Conner. (Letter of 2/20/97 from Wheeler to Conner, Def.'s Br. Supp. Ex. E.) On March 6, 1997, Nicholson notified Conner that she was to appear for an independent medical examination on March 21, 1997. On March 10, 1997, Dr. Proos responded to Hendryx' request for Conner's work restrictions. Dr. Proos stated that Conner could return to light duty work. (Def.'s Br. Supp. Ex. H-2.) By letter dated March 14, 1997, the VA offered Conner a light duty position in the Medical Center Cost Recovery Section of the facility, which was consistent with the restrictions identified by Dr. Proos. (Letter of 3/14/97 from Nicholson to Conner,

4

Def.'s Br. Supp. Ex. I.) Conner's duties were to include verifying patient and insurance information by telephone, her work hours were from 8:00 a.m. to 4:30 p.m., and her pay was at her current pay rate. She accepted the position in writing and commenced working on March 17, 1997.

On March 21, 1997, the OWCP issued its decision denying Conner's claim for compensation benefits on the ground that she had ben terminated for cause and not because of her claimed work injury. (3/21/97 Decision, Def.'s Br. Supp. Ex. J.) That same day, the VA notified Conner in writing at work that she would be discharged on March 28, 1997, and would be placed on paid administrative leave until that date. (Letter of 3/21/97 from Wheeler to Conner, Def.'s Br. Supp. Ex. K.) Conner was then escorted off of the premises.

Conner filed two Equal Employment Opportunity ("EEO") complaints, one on March 29, 1997, before she sought EEO counseling on April 8, 1997, and the other on May 5, 1997. The allegations accepted for investigation were discrimination on the bases of race (Negro), color (Black), sex (female), age (47), disability (blind in the left eye and her on-the-job back injury), and retaliation. On September 4, 2002, after completion of the EEO investigation, Administrative Judge ("AJ") Mimi M. Gendreau issued a written decision granting summary judgment to the VA and concluding that Conner's claims of discrimination and retaliation were without merit and that the VA's reason for terminating Conner – her criminal conviction – was legitimate and not merely a pretext for discrimination. AJ Gendreau observed:

> Basically, it is clear that the Complainant did not like that the Agency found out about her conviction for fraud which resulted in her removal. Rather, [sic] than take any responsibility for her criminal actions, she continues to blame the Agency in an attempt to gain a monetary award under the civil rights statutes. The evidence supports the Agency's reasons for it [sic] actions and supports that those actions were not discriminatory.

(9/04/02 Decision at 30.) On October 31, 2002, the Director of the VA Office of Employment Discrimination Complaint Adjudication issued a final order determining that AJ Gendreau's decision

5

was factually and legally correct. Conner appealed the decision, and on February 1, 2004, the Equal Employment Opportunity Commission ("EEOC") affirmed. The EEOC denied Conner's request for reconsideration on April 19, 2004. Conner then filed the instant case.

## II. Discussion

As noted above, in addition to Defendant's motion for summary judgment, the Court has before it Conner's motion to strike the declarations of Cindy L. Martin, Thomas Maher, and Shelly Hendryx, which Defendant has submitted in support of its motion for summary judgment. Because Conner's motion goes to the validity of the evidentiary support for Defendant's motion, the Court will first address the motion to strike.

**A.     Motion to Strike**

Conner argues that the declarations of Cindy Martin, Thomas Maher, and Shelly Hendryx must be stricken from the record primarily because the declarants lack personal knowledge regarding the matters set forth in their declarations or because they lack personal knowledge about the documents referenced in their declarations.

An affidavit submitted in support of a motion for summary judgment must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Weberg v. Franks, 229 F.3d 514, 526 n.13 (6th Cir. 2000). Affidavits containing hearsay cannot be considered on a motion for summary judgment. See Wiley v. United States, 20 F.3d 222, 226 (6th Cir. 1994). Similarly, affidavits that contain conclusory allegations or are based upon subjective beliefs are insufficient to support a motion for summary judgment. See Jones v. Butler Metro. Hous. Auth., 40 F. App'x 131, 134 (6th Cir. 2002).

A party may authenticate documents for admission pursuant to the business records exception to the hearsay rule in a declaration by the records custodian. See United States v. Reamey, 132 F. App'x 613, 615-16 (6th Cir. 2005); Texas A & M Research Found. v. Magna Transp., Inc., 338 F.3d 394, 402 (5th Cir. 2003). In order to be admissible under Federal Rule of Evidence 803(6), a business record must meet the following requirements: (1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the business must have kept the record as part of its regular practice; and (4) the record must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge. See Redken Labs., Inc. v. Levin, 843 F.2d 226, 229 (6th Cir. 1988). As the Sixth Circuit has explained:

> "Rule 803(6) does not require that the custodian personally gather, input, and compile the information memorialized in a business record." The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices. Likewise, "[t]o be an 'other qualified witness,' it is not necessary that the person laying the foundation for the introduction of the business record have personal knowledge of their preparation."

United States v. Salgado, 250 F.3d 438, 451-52 (6th Cir. 2001) (citations omitted).

The first declaration that Conner argues should be stricken is the declaration of Cindy L. Martin, Conner's former supervisor. Conner claims that Martin's declaration is defective for a number of reasons, including: (1) she did not certify exhibits attached to her declaration; (2) she does not describe her administrative duties; (3) she cannot testify regarding statements in certain documents because she did not prepare those documents; and (4) her statements regarding Cynthia Kolassa, the white female who Conner identifies as a similarly situated employee, are contradictory and conclusory. Conner's arguments fail for several reasons. First, no documents are attached to

7

the Martin declaration, nor does Martin state that any documents are attached. Second, the statements in Martin's declaration, as well as other documents submitted by Defendant and Conner, show that Martin had personal knowledge regarding the facts set forth in her declaration. Martin's brief declaration is limited to describing the specifics of Conner's employment between January 6, 1997, and the date of her termination, March 28, 1997, as well as the details of Cynthia Kolassa's employment. Martin supervised both employees, and would be expected to have knowledge of when and where they were working in the VA facility and the jobs to which they were assigned. Finally, although it is not a basis for striking Martin's declaration, the Court finds nothing contradictory or conclusory about Martin's statement that she supervised Kolassa until her disability retirement on July 28, 2000.

Conner next takes issue with the declaration of Thomas Maher, a staff attorney for the Office of Regional Counsel of Veterans Affairs in Detroit, Michigan. Maher states that he was the attorney assigned to Conner's case and therefore has "knowledge and custody of the pertinent Administrative EEOC files which are maintained in the regular course of business by the Office of Regional Counsel." (Maher Decl. ¶ 2.) Maher further states that he reviewed the VA's records regarding the EEOC administrative proceeding and copied the original documents from that file for use in the motion for summary judgment, including Exhibits A, B, E, K, L-1, L-2, M, N, and O. (Id. ¶ 3.) In his supplemental declaration filed in support of Defendant's response to the motion to strike, Maher explains that he obtained the VA's administrative EEO file in 2000 from staff attorney Laura Hillock, who was transferred to the VA's Pittsburgh Regional Counsel Office. (Maher 4/13/06 Decl. ¶ 2.) Maher represented the VA in the administrative case through its final dismissal. (Id.) Conner's primary argument is that Maher did not participate in the events set forth in the exhibits,

does not have personal knowledge about those events, and may not testify regarding those events. However, Maher's declarations show that, based upon his involvement in the administrative proceeding, he has personal knowledge regarding several of the events reflected in the exhibits attached to his declaration (Exhibits L-2, M, N, and O) and, with regard to the remaining exhibits, that he acquired personal knowledge from others with a business duty to report the events or transactions. Moreover, Maher does not purport to testify about the contents of the exhibits, but instead is merely certifying the authenticity of the exhibits as the custodian of the Office of Regional Counsel's administrative EEO file. Because Maher's declarations satisfy the requirement for admissibility under Rule 803(6), the exhibits are admissible, even though they are not the originals. See Fed. R. Evid. 902(11). Finally, Conner's complaints that Exhibits A and E are not authentic because neither exhibit is on VA letterhead and Exhibit E is unsigned must be rejected. Maher confirms in his supplemental declaration that both exhibits are copies of the originals and that the VA's standard practice was not to use letterhead stationary to create copies. (Maher 4/14/06 Decl. ¶ 4.) Furthermore, Defendant has shown that Conner received a signed copy of Exhibit E. (Hecker Decl. ¶ 7 & Ex. CC.)

The final declaration is that of Shelly Hendryx, the Compensation Specialist who handled Conner's claim for benefits with the OWCP. As with the other declarations, Conner asserts that Hendryx's declaration should be stricken because Hendryx lacks personal knowledge regarding the statements in her affidavit and with regard to the exhibits referenced in her declaration. Contrary to Conner's arguments, Hendryx's declaration shows that she has first hand knowledge regarding the matters addressed in her declaration. First, regarding paragraphs 3 and 4 of the declaration, Hendryx, as the person responsible for handling Conner's claim for compensation benefits and

9

whose regular duties include handling work-related injuries, would have had personal knowledge regarding Conner's compensation claim, including the facts surrounding Conner's injury and the assignment to the light duty position. In fact, the exhibits submitted by both parties show that Hendryx was the person responsible for communicating with Conner, Dr. Proos, the OWCP, and others regarding Conner's claim for benefits. In addition, Hendryx would also have knowledge, as part of her job duties, regarding COP. Hendryx was also the custodian of the VA's compensation and light duty records, including Exhibits C, D-1, D-2, D-3, D-4, F, G, H-1, H-2, I, and J, and is the proper person to authenticate those records as copies of the originals maintained in the VA's files. (Hendryx Decl. ¶¶ 5-7.) And, the Court finds that those documents are admissible under Rule 803(6), especially because there is no reason to question their reliability. Finally, Defendant has shown that Hendryx has personal knowledge, even with regard to various documents signed by her supervisor, Nicholson, because Hendryx actually prepared those documents. (Hendryx 4/13/06 Decl. ¶ 8.) Accordingly, the Court will deny Conner's motion to strike in its entirety.

**B.      Motion for Summary Judgment**

Defendant contends that it is entitled to summary judgment on several grounds. First, it argues that Conner failed to exhaust her administrative remedies with regard to her allegations of harassing comments, no proper medical attention, deceptive agreements, refusal to process and address a secondary injury of depression, failure to address all issues and to do the right thing, and sexual harassment and, therefore, any such claims must be dismissed. (Compl. ¶¶ 7G, 8G.) Second, Defendant contends that Conner has failed to establish a prima facie case of discrimination based upon her race, color, sex, or age and, that in any event, any discrimination claim must fail because Defendant has presented a legitimate non-discriminatory reason for its actions. Finally, Defendant

10

contends that Conner fails to state a claim for both sexual harassment and a violation of the Rehabilitation Act.

### 1. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. Id.

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Agristor Financial Corp. v. Van Sickle, 967 F.2d 233, 236 (6th Cir. 1992) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### 2. Scope of Conner's Claims

"In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" McFarland v. Henderson, 307 F.3d 402, 406 (6th Cir. 2002) (quoting Brown v. Gen. Servs. Admin., 425 U.S. 820, 833, 96 S. Ct. 1961, 1968 (1976)). A corollary of the exhaustion requirement is that federal courts have jurisdiction over a claim only if the claimant unsuccessfully exhausts the claim with the EEOC. See Love v. Pullman Co., 404 U.S. 522, 523, 92 S. Ct. 616, 617 (1972); Abeita v. Transamerica Mailings, Inc., 159 F.3d 246, 254 (6th Cir. 1998). A district court has subject matter jurisdiction to hear a Title VII claim

only if "the claimant explicitly files the claim in an EEOC charge." Id. The rule in the Sixth Circuit is that "the complaint and the judicial proceedings are limited not to the words of the EEOC charge but to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." Farmer v. ARA Servs., Inc., 660 F.2d 1096, 1105 (6th Cir. 1981); see also Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir. 1992) (stating that because administrative complaints are usually filed by lay persons, "the administrative complaint should be liberally construed to encompass all charges 'reasonably expected to grow out of the charge of discrimination'") (quoting EEOC v. Bailey Co., 563 F.2d 439, 446 (6th Cir. 1977)). The EEOC filing requirement allows the EEOC to use its investigative and conciliatory procedures to obtain voluntary compliance with the law without the necessity of litigation. See Davis v. Sodexho, Cumberland Coll. Cafeteria, 157 F.3d 460, 463 (6th Cir. 1998).

As noted above, Conner's allegations that were accepted for investigation during the administrative process were discrimination based upon race, color, sex, age, disability, and in retaliation for prior EEO activity. Conner, who was represented by an attorney during the administrative proceeding, did not present her claims of harassing comments, no proper medical attention, deceptive agreements, refusal to process and address a secondary injury of depression, failure to address all issues and do the right thing, and sexual harassment to the EEOC to enable it to investigate the allegations and to conduct good faith conciliation of those claims. Conner concedes that she did not present these claims to the EEOC. She argues, however, that she may assert them in this action because: (1) she did not have to divulge her theories of discrimination; and (2) these allegations are reasonably related to the allegations in her EEOC charge. Both arguments lack merit. As noted above, the claims that Conner may assert in this litigation are limited to those

12

claims that were actually presented, or reasonably expected to grow out of such claims. Conner is incorrect that the availability of de novo review by this Court somehow excuses her from presenting her claims to the EEOC. As for her second argument, Conner has failed to explain how her new allegations in this case could be reasonably expected to grow out of her charge of discrimination. Therefore, the Court lacks subject matter jurisdiction over Conner's new claims.

### 3. Discrimination Claims

Conner alleges discrimination on the basis of race, color, and sex under Title VII; age under the ADEA; and disability under the Rehabilitation Act. A plaintiff may establish a prima facie case of discrimination by introducing either credible, direct evidence of discriminatory intent or by circumstantial evidence through the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). See Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997) (Title VII claim); Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (ADEA claim); Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 452-53 (6th Cir. 2004) (ADA claim). In this case, Conner has not offered any direct evidence of discrimination, so she must prove her claims through circumstantial proof of discrimination.

To establish a prima facie case of discrimination under Title VII, a plaintiff must show that: (i) she is a member of a protected class; (ii) she was qualified for the job; (iii) she was subject to an adverse employment action; and (iv) a similarly-situated non-minority employee was treated differently for the same or similar conduct. See Perry v. McGinnis, 209 F.3d 597, 601 (6th Cir. 2000). The elements of a prima facie case of discrimination under the ADEA are similar, with the first element being that the plaintiff was at least 40 years old at the time of the discrimination. See Bush v. Dictaphone Corp., 161 F.3d 363, 368 (6th Cir. 1998). The elements of a prima facie case

under the Rehabilitation Act are the plaintiff: (i) was disabled; (2) she was otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment action; (4) the employer knew or had reason to know of her disability; and (5) a non-disabled employee was treated more favorably for the same or similar conduct. See DiCarlo v. Potter, 358 F. 3d 408, 418 (6th Cir. 2004). If the plaintiff establishes a prima facie case, a presumption of intentional discrimination arises, and the burden then shifts to the defendant to set forth "'a legitimate, nondiscriminatory reason' . . . for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742, 2747 (1993) (emphasis in original) (citations omitted) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094 (1981)). If the defendant meets its burden of production, the plaintiff must then prove by a preponderance of the evidence that the defendant's conduct was motivated by unlawful discrimination rather than by the reasons articulated by the defendant. See Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 883 (6th Cir. 1996) (citing Burdine, 450 U.S. at 252-53, 101 S. Ct. at 1093-94).

Conner's discrimination claims fail because she has not established a prima facie case of discrimination under Title VII, the ADEA, or the Rehabilitation Act. Specifically, she has not shown that she was subjected to an adverse employment action or that a similarly situated employee outside of the protected class was treated differently.

With regard go the requirement of an adverse employment action, Conner claims that her reassignment to work in the Medical Center Cost Recovery Section of the facility and Defendant's decision to contest her claim for workers' compensation benefits constituted adverse employment

14

actions.[1] First, Conner's reassignment was not an adverse employment action because Defendant has shown that Conner remained in her position as an R.N., was not demoted, and did not suffer a reduction in pay. Moreover, the evidence shows that Defendant offered Conner the position merely to accommodate her medical restrictions given by Dr. Proos. And (in spite of her unsupported claim of duress) she voluntarily accepted the position. See Amann v. Potter, 105 F. App'x 802, 807-08 (6th Cir. 2004) (concluding that the transfer of the plaintiff to an air-conditioned facility because of heat exhaustion concerns was not an adverse employment action because the employer was merely accommodating the plaintiff's request to work in an air-conditioned facility). Second, the VA's decision to contest Conner's claim for workers' compensation benefits did not constitute an adverse employment action because the VA had legitimate grounds for contesting Conner's claim. That is, given the temporal proximity between the notification to Conner of her proposed discharge and the alleged incident, the VA had ample reason to dispute the validity of Conner's claim. Other courts have held that an employer's defense of a claim for benefits under similar circumstances is not an adverse employment action. See Bell v. Georgia-Pacific Corp., 390 F. Supp. 2d 1182, 1189 (M.D. Fla. 2005) (concluding that the employer's "decision to contest the Plaintiff's workers' compensation claim [was] not [an] adverse employment action[]"); Barriera v. Bankers Trust, No. 98 Civ. 3641(MBM), 2003 WL 22387099, at *7 (S.D.N.Y. Oct. 20, 2003) ("Bankers Trust did not subject Barriera to an adverse employment action when it opposed her unemployment benefits claim by informing the appropriate authority that Barriera had resigned. As Barriera's former employer,

---

[1]Conner states that her claims are not based upon her termination. (Pl.'s Opp'n Mem at 24 ("Plaintiff is not contesting her ultimate employment termination.").) Incidentally, the Court notes that Conner's brief does not comply with the requirements of the local rules of this district in that it exceeds 25 pages. Conner did not seek leave to exceed the page limitations. Nonetheless, in light of Conner's pro se status, the Court has read and considered the brief in its entirety.

15

Bankers Trust was entitled to oppose her unemployment claim."); Wright v. Life Start Ctrs., Inc., No. 00 C 362, 2000 WL 1643781, at *3 (N.D. Ill. Oct. 20, 2000) ("The law certainly permits an employer to oppose a former employee's claim for unemployment compensation; it is difficult to imagine circumstances in which a legitimate challenge could give rise to a claim for retaliation under Title VII."); Baker v. Summit Unlimited, Inc., 855 F. Supp. 375, 376 (N.D. Ga. 1994) ("Such opposition was clearly the employer's right and duty and not retaliatory in nature, since Plaintiff initiated the unemployment benefits process and the employer participated as required. To defend itself in that process cannot be likened to the cases cited by Plaintiff where the defendants-employers initiated malicious and false legal proceedings against the former employee because the employee had filed an EEOC charge."). Moreover, the VA's defense of the claim cannot be considered an adverse action because, although the OWPC denied Conner's claim, it did so not for the reason the VA asserted (that the claim was bogus) but because the VA discharged Conner for a reason unrelated to her work injury. In other words, the OWPC did not even consider the VA's assertion that Conner's claim was suspect.

Apart from failing to demonstrate an adverse action, Conner has not shown that a similarly situated comparator was treated differently. The only similarly situated employee identified by Conner is Cynthia Kolassa, a registered nurse. Ms. Kolassa is a Caucasian female who was over 40 years old at the time she was granted disability retirement and when she was removed for performance issues. (Martin Decl. ¶ 4.) Because Ms. Kolassa is a female and was over 40 years old, her circumstances are relevant only to the claim of race discrimination because Ms. Kolassa is not outside the protected class for purposes of age and sex discrimination. However, even with respect to the race discrimination claim, Ms. Kolassa is not a comparable employee. In Mitchell v. Toledo

16

Hospital, 964 F.2d 577 (6th Cir. 1992), the Sixth Circuit held that similarly situated employees must "have dealt with the same supervisor, have conduct subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. at 583. Subsequent to Mitchell, the Sixth Circuit has explained that the plaintiff and a comparable employee need not be the same in every single aspect of their employment: "The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated,' rather, . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself must be similar in 'all of the *relevant* aspects.'" Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994)). Thus, a plaintiff need only show "relevant similarity," not "exact correlation." Perry v. McGinnis, 209 F. 3d 597, 601 (6th Cir. 2000). Although Ms. Kolassa, like Conner, was an R.N. and reported to Martin, the similarity ends there. Ms. Kolassa was injured at work but did not lose time from work and never received COP as a result of the injury. (Hendryx 4/13/06 Decl. ¶ 7.) She applied for and was granted disability retirement by the Office of Personnel Management. (Martin Decl. ¶ 4.) She was removed from her employment for performance issues after she filed for disability retirement. (Id.) In contrast, Conner was injured after she was notified of the proposed discharge, she missed work, and filed a claim for workers' compensation, not disability retirement. Moreover, Conner was discharged for her criminal conviction for fraud, while Ms. Kolassa was discharged for performance issues.

Even if Conner were able to establish a prima facie case of discrimination, Defendant has provided legitimate, non-discriminatory reasons for its actions. First, with regard to Defendant's

17

actions in contesting Conner's claim for workers' compensation benefits, Defendant has shown that it contested the claim based upon the timing of the injury and Conner's propensity for fraud, as demonstrated by her criminal conviction. Second, with regard to the transfer to light duty work, Defendant has shown that it assigned Conner to that position in order to accommodate the restrictions imposed by Conner's doctor. Nothing in the record suggests that either of these reasons was pretext for unlawful discrimination.

Finally, apart from the foregoing, Conner's Rehabilitation Act claim fails for the independent reason that Conner has not shown that she is disabled. The Americans With Disabilities Act ("ADA") defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); see Burns v. City of Columbus, 91 F.3d 836, 842 (6th Cir. 1996) ("By statute, the [ADA] standards apply in Rehabilitation Act cases alleging employment discrimination."). "Major life activities" include "functions such as caring for oneself, performing manul tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). An impairment "substantially limits" a major life activity if the plaintiff is "[u]nable to perform a major life activity that the average person in the general population can perform," or the plaintiff is "significantly restricted as to the condition, manner or duration under which [he or she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630(j)(1). Factors to be considered in determining whether a plaintiff is substantially limited in a major life activity are: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact of the impairment. 29 C.F.R. § 1630(j)(2). In Toyota Motor

Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 122 S. Ct. 681 (2002), the Supreme Court held "that to be substantially limited in [a major life activity], an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." Id. at 198, 122 S. Ct. at 691. The Court also held that a substantial limitation must apply to "the variety of tasks central to most people's daily lives," not merely to a sub-class of that activity. Id. at 200, 122 S. Ct. at 692-93. In addition, the Court observed that a medical diagnosis, alone, is insufficient to demonstrate that an individual has a disability within the meaning of the ADA where the impairment is one whose symptoms vary widely between individuals. Id. at 199, 122 S. Ct. 692.

Although Conner alleges that she is disabled due to blindness in her left eye and due to her back injury, she has not shown that these impairments substantially limit one or more major life activities, nor has she attempted to demonstrate that either impairment prevents her from performing most, or even any, major life activity. Moreover, the evidence shows that Conner's back injury does not amount to a substantial limitation because there is no evidence that it was a long-term injury. In fact, Dr. Proos confirmed that Conner's prognosis for recovery was good.

### 4. Retaliation Claim

Although Conner states that she is asserting a retaliation claim, she fails in her brief to even address the elements of, let alone cite any evidence to support, such a claim. Accordingly, no substantial analysis is required to reject the claim. In any event, even assuming that Conner could establish a prima facie case of retaliation, Defendant has articulated legitimate, non-discriminatory reasons for the purported adverse actions, and Conner has failed to show pretext.

### 5. **Failure to State a Claim**

Finally, Defendant argues that Conner has failed to state hostile work environment and Rehabilitation Act claims. Because the Court has already concluded that it lacks jurisdiction over Conner's purported sexual harassment claim, and because the Court has already concluded that Conner has failed to show that she is disabled, it need not decide whether Conner's complaint properly alleges such claims.

## III. Conclusion

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment.

An Order consistent with this Opinion will be entered.


Dated: June 21, 2006                                        /s/ Gordon J. Quist
                                                            GORDON J. QUIST
                                                     UNITED STATES DISTRICT JUDGE